UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGEL CLINE | CIVIL ACTION |
| VERSUS | NO: 23-856 |
| BP PRODUCTS NORTH AMERICA, INC., et al. | SECTION: T (1) |

## ORDER

Before the Court is the Motion to Remand filed by plaintiff, Angel Cline.[1] Defendants BP Products North America, Inc., BP American Production Company (collectively, "BP"), and Atlantic Richfield Company ("Atlantic Richfield") (BP and Atlantic Richfield are referred to herein as "Defendants") oppose the motion.[2] Plaintiff has filed a Reply Memorandum,[3] and the Motion has been submitted to the Court. For the following reasons, the Motion is GRANTED.

## BACKGROUND

During the scope of his employment with Tuboscope from approximately 1997 through 2011, William Cline worked at multiple pipe yards, including Tuboscope's First Avenue yard in Harvey, Tuboscope's yard in Houma, the Brown & Root yard in Belle Chasse, and the OFS, Inc. ("OFS") yard in Harvey.[4] In the oil production process, mineral deposits, or scale, build up in oil well pipes, causing obstruction and decreased production.[5] As a result, pipes with significant scale must be removed and replaced.[6] The removed pipes are separated and sent to pipe yards "to be

---

[1] R. Doc. 22.
[2] R. Doc. 23.
[3] R. Doc. 30.
[4] R. Doc. 22-1 at 4.
[5] *Id.* at 2-3.
[6] *Id.*

1

cleaned to remove the scale and inspected to see if they are fit to return to service in another well."[7]

The structure of chemicals in pipe scale facilitates the binding of radium radionuclides, a type of naturally occurring radioactive material ("NORM").[8] The binding of this material "causes the pipe scale to become highly, dangerously radioactive."[9] The pipe cleaning process, which includes the grinding of scale out of and off of the joints of the pipe, creates "a tremendous amount of dust," which may contaminate the yard and expose workers who inhale and ingest the dust to unsafe levels of radiation.[10] Though radiation levels are normally measured using a Geiger counter, the device only detects gamma rays and is not appropriate to detect the alpha and beta particles emitted by the radium in oil pipe scale.[11] The only accurate method of determining the presence and level of radium in this situation is to send a sample to a lab for chemical testing.[12]

Angel Cline ("Plaintiff") filed a wrongful death and survival action against numerous defendants for her deceased husband, William Cline's, alleged exposure to oil field radiation while working at various pipe yards.[13] Plaintiff alleges that this exposure led to Mr. Cline's cancer diagnosis and subsequent death.[14] Plaintiff's state court petition, initially filed in the 24th Judicial District Court of Jefferson Parish, named several noncitizen oil companies as defendants, as well as OFS, a Louisiana pipe inspection and cleaning corporation.[15] Subsequently, noncitizen Defendants, BP and Atlantic Richfield, removed the case to this court,[16] asserting that OFS was

---

[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4.
[11] *Id.* at 3.
[12] *Id.*
[13] *See* R. Doc. 1-1.
[14] *Id.* at 5, 9.
[15] *Id.* at 3-5.
[16] R. Doc. 1 at 1.

improperly joined because OFS cannot be held liable for Plaintiff's damages.[17] Defendants argue that a 2014 affidavit of Douglass LaNasa, Jr., the president of OFS, as well as the decision in *Coleman v. H.C. Price Co.*, a case also involving OFS, demonstrate that OFS did not clean any used pipe after 1987, and therefore, Mr. Cline could not have been exposed to NORM while working at OFS's yard after 1997.[18]

Plaintiff filed the instant Motion to Remand,[19] arguing in support that the bases for removal were flawed for the following reasons: (1) the question of OFS cleaning used pipe after 1987 was not a seriously contested issue in *Coleman*;[20] (2) Mr. LaNasa's affidavit states that OFS did not clean used pipe at "*its facilities* after 1987," not that OFS did not clean used pipe at other locations where Mr. Cline had worked;[21] and (3) the LaNasa affidavit states that any cleaning of used pipe after 1987 was preceded by testing for NORM, so the assertion that OFS did not clean any NORM pipe after this date can only be true if the "the NORM testing done on this pipe was 100% effective at detecting and preventing the cleaning of all 'NORM pipe.'"[22] Plaintiff asserts that this testing is unlikely to have been 100% accurate and introduced the affidavit of Hodges Thierry, the NORM Radiation Safety Officer at Tuboscope's First Avenue yard from 1979 to 2002.[23] The Thierry affidavit states that OFS cleaned used pipe at the First Avenue yard until around 2003, that Mr. Cline worked at the same locations where OFS cleaned used pipe, and that Mr. Thierry had tested for and found NORM contamination at these locations from the early 1990s to 2002.[24]

---

[17] *Id.* at 4.
[18] *Id.* at 11-12.
[19] R. Doc. 22.
[20] R. Doc. 22-1 at 5.
[21] *Id.*
[22] *Id.* at 6.
[23] *Id.* at 4-7.
[24] *Id.* at 4-5.

3

Accordingly, Plaintiff argues, OFS's liability for causing Mr. Cline's NORM exposure and subsequent illness "is certainly an open question and it cannot be said that there is no chance of recovery from OFS on these claims," thereby "rais[ing] a serious question as to whether the removal was 'objectively reasonable' because from the start defendants had 'no plausible argument that diversity jurisdiction was satisfied.'"[25]

In opposition to Plaintiff's motion, Defendants note that, for purposes of removal and remand, subject-matter jurisdiction must be "evaluated on the basis of the claims set forth in the state court complaint as it existed at the time of removal."[26] Defendants allege (1) that Plaintiff's petition does not state a viable claim against OFS and (2) that "Mr. LaNasa's affidavit clearly and unequivocally demonstrates that there can be no viable claim against OFS related to the cleaning of used pipe during the time frame of Mr. Cline's alleged exposures at Tuboscope."[27] Consequently, Defendants argue, OFS is an improperly joined defendant, and its citizenship should not be considered for purposes of diversity subject-matter jurisdiction.[28] Therefore, Defendants assert complete diversity exists, thereby granting this Court subject-matter jurisdiction and making removal proper.[29]

## LAW AND ANALYSIS

### I. Remand and Removal

"The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441."[30] To determine whether subject-matter jurisdiction

---

[25] *Id.* at 7-8 (citing *Abrams v. Olin Corp.*, 248 F.R.D. 283, 292 (S.D. Ala. 2007)).
[26] R. Doc. 23 at 2 (citing *Cordova v. Louisiana State Univ. Health Sci. Ctr.*, 2021 WL 972738, at *2 (W.D. La. Mar. 1, 2021)).
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

exists for purposes of removal, courts "consider the claims in the state court petition as they existed at the time of removal."[31] Subsequent filings and proceedings generally do not deprive the district court of its subject-matter jurisdiction.[32] Nevertheless, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."[33]

Diversity jurisdiction exists in a civil action where the amount in controversy exceeds $75,000 and the parties are citizens of different states.[34] There must be complete diversity between the parties, meaning that none of the plaintiffs may be citizens of the same state as any of the defendants.[35] Removal based solely on diversity jurisdiction is prohibited "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[36]

## II. **Improper Joinder**

Improper joinder, also referred to as fraudulent joinder, occurs when a plaintiff joins a non-diverse party as a defendant "solely for the purpose of blocking jurisdiction based on diversity."[37] If a court determines that the plaintiff has improperly joined a non-diverse defendant, "then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant."[38]

On a motion to remand, the defendant claiming improper joinder bears the burden of

---

[31] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).
[32] *Cordova*, 2021 WL 972738, at *2.
[33] *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).
[34] 23 U.S.C. § 1332.
[35] *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (*en banc*)).
[36] 28 U.S.C. § 1441.
[37] *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 219 (5th Cir. 2018).
[38] *Flagg*, 819 F.3d at 136 (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-186 (1907); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc)).

persuading the court that improper joinder has occurred.[39] Improper joinder may be demonstrated "by showing (1) actual fraud in the pleadings or (2) the inability of the plaintiff to establish a cause of action against the nondiverse party in state court."[40] The Fifth Circuit has clarified the inquiry in the second situation to be "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[41]

To determine whether a reasonable basis of recovery exists, courts "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[42] "[I]f the complaint is sufficient to state a claim, there is no improper joinder."[43] The allegations in the complaint should be reviewed in the light most favorable to the plaintiff, with any contested issues of fact or ambiguities of state law resolved in the plaintiff's favor.[44] Accordingly, "[t]he burden of persuasion on those who claim fraudulent joinder is a heavy one."[45]

Nonetheless, if the plaintiff's complaint "misstated or omitted discrete facts that would determine the propriety of joinder," then the district court may elect to "pierce the pleadings and conduct a summary inquiry."[46] The Fifth Circuit has cautioned that "a summary inquiry is appropriate only to identify the presence of *discrete and undisputed facts* that would preclude

---

[39] *Cumpian*, 910 F.3d at 219-20.
[40] *Id.* at 219 (quoting *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016)) (internal quotation marks omitted).
[41] *Smallwood*, 385 F.3d at 573.
[42] *Id.*
[43] *Cumpian*, 910 F.3d at 220.
[44] *See, e.g.*, *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Cumpian*, 91 F.3d at 220.
[45] *Travis*, 326 F.3d at 649.
[46] *Smallwood*, 385 F.3d at 573.

plaintiff's recovery against the in-state defendant."[47] Examples of such discrete and undisputed facts are situations where "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, . . . or any other fact that easily can be disproved if not true."[48] Furthermore, "the motive or purpose of the joinder of in-state defendants is not relevant," and "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[49]

## **ANALYSIS**

The two issues presented by Plaintiff's motion and Defendants' opposition are whether OFS is a properly joined defendant and whether Plaintiff's proposed supplemental complaint would destroy complete diversity and make remand appropriate. As correctly noted by Defendants, subject-matter jurisdiction must be "evaluated on the basis of the claims set forth in the state court complaint as it existed at the time of removal."[50] Accordingly, for purposes of determining whether this court has subject-matter jurisdiction, this Court must look to Plaintiff's state court complaint at the time of removal, and Plaintiff is unable to destroy diversity through the addition of another non-diverse defendant after removal. Therefore, the central issue before the Court is whether OFS, the sole Louisiana defendant, is properly joined. Defendants argue that Mr. LaNasa's affidavit and the *Coleman* decision demonstrate that OFS has not cleaned any NORM pipe since 1987 and, therefore, Plaintiff has no viable negligence action against OFS.[51] On the other hand, Plaintiff

---

[47] *Id.* at 574 (emphasis added).
[48] *Id.* at 574 n.12.
[49] *Id.* at 574.
[50] R. Doc. 23 at 2; *e.g.*, *Cordova*, 2021 WL 972738, at *2.
[51] R. Doc. 23 at 5.

7

asserts that OFS is properly joined because OFS's liability "is certainly an open question and it cannot be said that there is no chance of recovery from OFS on these claims."[52]

In *Cumpian v. Alcoa World Alumina, L.L.C.*, the Fifth Circuit reviewed a Texas district court's denial of a plaintiff's motion to remand under similar facts.[53] There, the plaintiff suffered chemical burns while working at a plant owned by noncitizen Alcoa World Alumina, L.L.C. ("Alcoa").[54] The plaintiff filed a negligence action in Texas state court, naming noncitizen Alcoa and Texas citizens Stephen Alvarado and Palacios Marine & Industrial Coatings ("PMIC") as defendants.[55] Alcoa removed the case to federal court, claiming that the plaintiff had improperly joined the Texas defendants.[56] According to the plaintiff, PMIC "was assigned the task of ensuring the tank [he opened] was cleared of Caustic Liquor,"[57] but Alcoa argued that plaintiff lacked evidence of PMIC's involvement in tagging the tank to indicate it was clear of Caustic Liquor and therefore had not established any duty owed by PMIC.[58] The district court denied the plaintiff's motion to remand, "finding that PMIC was not a proper party because the court could not 'reasonably predict that [plaintiff] will recover' from it."[59] On appeal, the plaintiff assigned error to the district court's refusal to remand.[60] In its *de novo* review, the Fifth Circuit vacated the judgment and remanded to the district court with instructions to remand to Texas state court.[61]

The court noted that the district court's decision appeared to rely in part on Alcoa's

---

[52] R. Doc 22-1 at 7.
[53] *Cumpian*, 910 F.3d at 218.
[54] *Id.* at 218-19.
[55] *Id.*
[56] *Id.* at 219.
[57] *Id.* at 218.
[58] *Id.* at 220.
[59] *Id.* at 219.
[60] *Id.*
[61] *Id.* at 219, 221.

8

affidavit, which stated that PMIC was not permitted to perform the examination of pipes for Caustic Liquor.[62] The Fifth Circuit wrote of the district court's error:

> "On a question of improper joinder at the early stage of a case, it is error to use the no-evidence summary judgment standard because the determination is being made before discovery has been allowed. Instead, the evidence that is dispositive on the *Smallwood* inquiry are the facts that could be easily disproved if not true."[63]

The court highlighted that rather than providing dispositive evidence demonstrating that PMIC did not examine the tank in question, Alcoa merely presented evidence that it does not allow contractors to do so.[64] The court stressed the non-dispositive nature of Alcoa's affidavit, writing, "[s]uch prohibitions at this point in the case, though, simply indicate the standard rules of the workplace. Policies, guidelines, or any number of restrictions might be ignored, particularly in emergency situations."[65] Accordingly, the court concluded that PMIC was not improperly joined.[66]

Here, Defendants allege Plaintiff has failed to state a claim against OFS. Reviewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated a valid claim upon which relief may be granted. Plaintiff's complaint lists two classes of defendants: Oil Company Defendants and Pipe Cleaning Contractor Defendants.[67] OFS is the sole Pipe Cleaning Contractor Defendant.[68] Plaintiff lists multiple grounds for liability against this class of defendants, including, but not limited to, failure to conduct safe operations, failure to contain or dispose of NORM, failure to test pipe or monitor emissions properly, and failure to warn Mr. Cline of the

---

[62] *Id.*
[63] *Id.* at 220-21 (citing *Davidson*, 819 F.3d at 765).
[64] *Id.* at 221.
[65] *Id.*
[66] *Id.*
[67] R. Doc. 1-1 at 3.
[68] *Id.* at 5.

9

dangerous materials.[69] Plaintiff further states this class of defendants breached its duty to conduct their operations in a safe manner that would not cause harm to Mr. Cline.[70] Clearly, these claims are directed against OFS, the only defendant listed under the class of Pipe Cleaning Contractor Defendants. Accordingly, Plaintiff's state court complaint is sufficient to state a claim under Louisiana law against OFS, an in-state defendant.

Next, Defendants allege the presence of discrete and undisputed facts that would preclude Plaintiff's recovery against OFS.[71] Defendants assert that Mr. LaNasa's affidavit and the decision in *Coleman* yield the unquestionable conclusion that OFS cannot be held liable for Mr. Cline's exposure, disease, and death.[72] Accordingly, this Court must analyze the evidence to determine if Plaintiff truly has no possibility of recovery against OFS. First, Mr. LaNasa's affidavit, much like the affidavit in *Cumpian*, speaks only to OFS's general policies and guidelines and does not definitively rule out the possibility that OFS cleaned NORM pipe at the Tuboscope yard.[73]

Second, while this affidavit did lead the *Coleman* court to dismiss similar charges against OFS, a review of the opinion in *Coleman* highlights a key difference between the cases.[74] In *Coleman*, several pipe yard workers and the surviving spouses and children of deceased pipe yard workers brought personal injury, wrongful death, and survival claims against various defendants, including OFS, based on their alleged workplace exposure to radioactive oil field waste materials.[75] The district court reviewed 23 motions filed by the defendants, including OFS's

---

[69] *Id.* at 8-9.

[70] *Id.* at 9.

[71] R. Doc. 23 at 5.

[72] *Id.*

[73] *See* R. Doc. 1-3 ("After 1987 OFS would not and did not clean used pipe anywhere unless it had first been tested for the presence of NORM.")

[74] *Coleman v. H.C. Price Co.*, No. 11-2937, 2014 WL 4354443 at *9 (E.D. La. Sept. 2, 2014).

[75] *Id.* at *1.

Motion to Dismiss for Failure to State a Claim and/or Summary Judgment.[76] There, OFS presented Mr. LaNasa's affidavit,[77] arguing that the company could not be held liable for the plaintiffs' alleged exposure after it stopped cleaning used pipe after 1987.[78] The court concluded this affidavit was "competent summary judgment evidence" and noted that "the burden shifts to the Plaintiffs to come forward with evidence to create a genuine fact issue."[79] Because the plaintiffs did not come forward with any evidence, the court dismissed the claims against OFS.[80]

Here, Defendants have presented the same affidavit in support of its assertion that OFS is improperly joined.[81] Accordingly, the burden shifts to Plaintiff to present evidence that would create a genuine fact issue. Unlike the *Coleman* plaintiffs, Plaintiff in the instant case has presented such evidence. Mr. Thierry's affidavit, which summarizes his findings of NORM contamination at locations where both OFS had cleaned used pipe and Mr. Cline had worked after OFS allegedly stopped cleaning NORM pipe, raises a genuine question as to whether OFS may be held liable. The existence of a genuine question of material fact, which precludes the court from making a decision in a summary manner, points to an inability of the removing parties to carry their burden.[82] Because Defendants cannot prove the absence of a reasonable basis for Plaintiff to recover against OFS, OFS has not been improperly joined in this matter and remand is appropriate.

---

[76] *Id.*
[77] R. Doc. 23 at 6.
[78] *Coleman*, 2014 WL 4354443 at *9.
[79] *Id.*
[80] *Id.*
[81] R. Doc. 23 at 6.
[82] *See Smallwood*, 385 F.3d at 574.

## **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the Motion to Remand filed by Plaintiff, Angel Cline is **GRANTED**.

New Orleans, Louisiana, this 17th day of July 2023.

                                                    GREG GERARD GUIDRY
                                                    UNITED STATES DISTRICT JUDGE